# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **NICOLE LAPPIN, individually and on behalf of all others similarly situated** <br> c/o Spangenberg Shibley & Liber LLP <br> 1001 Lakeside Avenue East, Suite 1700 <br> Cleveland, OH 44114 <br><br>               **Plaintiff,** <br><br> v. <br><br> **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,** <br> **an Illinois Corporation** <br> c/o CT Corporation, Statutory Agent <br> 4400 Easton Commons Way, Suite 125 <br> Columbus, OH 43219 <br><br>               **Defendant.** | CASE NO. 5:20-cv-107 <br><br> **JUDGE** <br> **MAGISTRATE** <br><br><br> **CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff, Nicole Lappin ("Plaintiff"), on behalf of Plaintiff and all others similarly situated, files this Class Action Complaint against Allstate Fire and Casualty Insurance Company ("Allstate"), and in support thereof state the following:

## NATURE OF THE ACTION

1. This is an Ohio class action lawsuit by Ohio resident Nicole Lappin, who suffered a total loss on an insured vehicle. Plaintiff was insured under an Allstate private passenger auto ("PPA") policy of insurance (the "Policy").[1] Plaintiff made a covered claim for physical damage.

---

[1] A true and correct copy of Plaintiff's Policy is attached hereto as **Exhibit A**.

Defendant breached its policy by failing to pay the full sales tax, title transfer fees, and registration fees due under the policy.

2. Plaintiff files this lawsuit on behalf of all persons insured under an Allstate insurance policy who suffered a total-loss covered claim and were not paid the full sales tax, title-transfer fees, and registration fees due under their policy.

3. In the Policy, Defendant's standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the actual cash value ("ACV") of the insured vehicle to the insured.

4. Defendant's standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Ohio during the relevant time period.

5. Sales tax, title-transfer fees, and registration fees are a mandatory part of the replacement cost of every PPA vehicle insured by Defendant in Ohio, including for Plaintiff's total-loss vehicle. State law imposes a mandatory state sales tax of 5.75% (plus applicable local taxes), minimum title transfer fees of $15.00, and minimum registration fees of $4.50 on each vehicle purchase or transfer of title and registration. As such, the Policy includes sales tax, title-transfer fees, and registration fees (which are mandatory replacement costs)[2] in the ACV total-loss coverage provided by Allstate.

6. The sales tax is due under the Policy on a total-loss insured vehicle as part of the ACV. Sales tax is based on the sales tax due on any purchase of a replacement vehicle of the same value as the total-loss vehicle at the time of the loss.

---

[2] The sales tax, title-transfer fees, and registration fees (which are mandatory replacement costs) are also referred to herein as "FTLP."

7. Defendant breaches the Policy by imposing on insureds terms and conditions that are not contained in the Policy. Specifically, Defendant does not pay sales tax on covered total-loss claims unless the insured purchases a replacement vehicle within 30 days of Defendant's initial coverage payment, and presents proof of payment of sales tax on the purchase of the replacement vehicle. Even then, Defendant will not pay title-transfer and registration fees even if the insured has purchased a replacement vehicle.

8. The Policy does not include any requirement that an insured must purchase a replacement vehicle within 30 days, pay sales tax, title-transfer fees, and registration fees on the replacement vehicle, and provide proof of payment of tax and fees as a condition to receiving the full coverage under the Policy. Rather, the Policy provides that it will pay ACV.

9. By imposing an extracontractual condition requiring insureds to purchase a replacement vehicle and pay sales tax, title-transfer fees, and registration fees on the replacement vehicle, Defendant has breached its insurance policy with Plaintiff.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the putative class, which consists of at least 100 members; (b) Plaintiff is an Ohio citizen and Defendant is an Illinois citizen; and (c) the amount-in-controversy exceeds the sum of $5 million exclusive of interest and costs.

11. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction here.

## PARTIES

12. Nicole Lappin is and was domiciled in Summit County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

13. Allstate is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Illinois. Allstate transacts insurance in Ohio.

## FACTUAL ALLEGATIONS

14. Plaintiff entered the Policy agreement to be insured by Allstate. *See* **Exhibit A**, the form policy, that sets out the Policy terms of coverage for total-loss claims for Plaintiff and all putative class members.

15. The Policy provided physical damage coverage for Plaintiff's 2010 Honda CR-V, VIN#: 5J6RE4H77AL060112 ("Insured Vehicle"). *See id.* at 5.

16. Plaintiff is a named driver on the Policy. *See id.* at 5.

17. On or about November 25, 2016, Plaintiff was involved in an auto collision while operating the Insured Vehicle. Plaintiff filed a claim with Allstate for the Insured Vehicle physical damage caused by the collision, claim number 437538788.

18. Allstate determined that the Insured Vehicle was a total loss and that the claim was a covered claim.

19. Allstate, through its vehicle valuation provider CCC Information Services, Inc. ("CCC"), determined the Insured Vehicle had a total value before deductible of $14,043.25. *See* **Exhibit B** at 1 ("Market Valuation Report").

20. CCC determined the Insured Vehicle had a base vehicle value of $13,329.00. CCC then made a negative condition adjustment by subtracting $192.00 from the base vehicle value to

determine that the adjusted vehicle value was $13,137.00. *See id*. Next, CCC added sales tax of $886.75 along with a $19.50 DMV fee to determine that the value before deductible was $14,043.25. *See id*. Finally, the $1,000.00 deductible was the subtracted by CCC to determine a total value of $13,043.25. *See id*.

21. Defendant ignored CCC's recommendation to include sales tax and DMV fees in the ACV settlement payment. Instead, Defendant subtracted the deductible of $1,000.00 from the adjusted vehicle value and did not include any amount for fees and taxes as reflected on the Market Valuation Report. Defendant determined the settlement value amount to be $12,137.00 and made a final payment for that amount. *See* **Exhibit C** ("Settlement Letter").

22. The sales tax on Plaintiff's claim was $866.75 because the applicable sales tax was 6.75% (5.75% state sales tax and 1.00% local sales tax) and the value of Plaintiff's Insured Vehicle at the time of the loss was $13,137.00. The title-transfer fee on Plaintiff's claim was $15.00 because Ohio mandates a minimum title-transfer fee of $15.00. The registration fee on Plaintiff's claim was $4.50 because Ohio mandates a minimum registration fee of $4.50.

23. Allstate paid $12,137.00 on Plaintiff's total-loss claim. But this payment did not include the required $866.75 for sales tax, $15.00 for title-transfer fees, or $4.50 for registration fees.

24. Allstate's failure to pay sales tax, title-transfer fees, and registration fees at the time of the loss breached the Policy because these fees are mandatory costs necessary for the replacement of her totaled Insured Vehicle.

**A.     The Policy requires Allstate to pay ACV.**

25. The Policy provided Plaintiff and class members with collision coverage with a limit of ACV.

26.     ACV is not explicitly defined in the Policy.

27.     Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV sales tax or state and/or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all in order to receive payment; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV state and regulatory sales tax and/or fees; or (5) any provision linking the amount of ACV state and regulatory sales tax and/or fees to a particular replacement vehicle and the corresponding state or local regulatory sales tax and/or fees on said replacement vehicle.

28.     The Policy provides as follows relating to PPA physical damage collision coverage:

> If a premium is shown on the Policy Declarations for Auto Collision Insurance, **we** will pay tor direct and accidental loss to **an insured auto** (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer.

Ex. A, Policy at 29 (emphasis in original).

29.     The Policy provides as follows relating to PPA physical damage comprehensive coverage:

> If a premium is shown on the Policy Declarations for Auto Comprehensive Insurance, **we** will pay for direct and accidental loss to an **insured auto** not caused by collision.

*Id.* (emphasis in original).

30.     Under "**Part 4: Protection Against Loss to the Auto**" the Policy provides the following limit of liability for PPA physical damage coverage:

6

### LIMIT OF LIABILITY

**Our** limit of liability for loss is the least of:

1. the actual cash value of the property or damaged part of the property at the time of the loss, which may include a deduction from depreciation; or

2. the cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to all applicable state laws and regulation;

* * *

Any applicable deductible is then subtracted.

*Id*. at 33 (emphasis in original).

31. The Policy does not condition an insured's receipt of full coverage upon the purchase of a replacement vehicle.

32. The Policy does not condition Defendant's payments of total-loss coverage on an insured's purchase of a replacement vehicle.

33. The Policy provides no notice to an insured that the amount of sales tax coverage provided under the Policy depends on an amount of sales tax actually paid on a replacement vehicle. The Policy does not require insureds to pay sales tax before receiving sales tax coverage related to their vehicle's replacement cost.

34. The Policy does not permit Defendant to withhold sales tax, title transfer fees, and registration fees from the ACV unless the insured purchases a replacement vehicle within 30 days of Defendant's original coverage payment and provides proof to Defendant of the payment of sales tax and title transfer fees on such replacement. Rather, the Policy requires ACV's determination

at the time of the loss, *not* after the purchase of a replacement vehicle and not depending on this replacement vehicle's price.

35. The Policy does not permit Defendant to determine the *amount* of sales tax coverage after purchase of a replacement vehicle (if any). Instead, the Policy promises ACV sales tax – sales tax based on the value of the total-loss vehicle rather than the sales tax incurred on purchase of a replacement vehicle, if any.

36. Throughout the class period, Ohio and its local governments imposed sales taxes applicable to the purchase of any private passenger vehicle. These sales taxes are mandatory and apply to the replacement of all total-loss vehicles in Ohio. Ohio Rev. Stat. § 5739.02(A). None of the exceptions in Ohio Rev. Stat. § 5739.02(B) apply to the sale or lease of private-passenger motor vehicles.

37. Throughout the class period, Ohio prohibited buying or selling motor vehicles unless the certificate of title under the name of the buyer was provided. Ohio Rev. Stat. § 4503.03. Ohio also prescribes the method and form for applying for transfer of certificate of title into the name of the buyer. Ohio Rev. Stat. § 4503.06. Finally, Ohio imposes a flat (minimum) fee on certificate of title transfers. Ohio Rev. Stat. § 4503.09. These title-transfer fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. At the time of Plaintiff's loss, the title-transfer fee was $15.00. *Id.*

38. Throughout the class period, Ohio required that every vehicle be legally and properly registered to be used or operated on Ohio highways and roadways. Ohio Rev. Stat. § 4503.10. Ohio provides the authority to set the fee amount for transfer of registration to the state registrar. Ohio Rev. Stat. § 4503.038. These registration fees are mandatory and apply to the

replacement of all total-loss vehicles in Ohio. The registration transfer fee at the time of loss on Plaintiff's replacement vehicle was $4.50.

39. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

## CLASS ALLEGATIONS

40. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

41. Plaintiff asserts claims for breach of contract on behalf of a class (hereafter the "Class") defined as follows:

> All insureds, under any Ohio policy issued by Allstate Fire and Casualty Company with the same operative policy language covering a vehicle with private-passenger automobile physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the eight year time period prior to the date one which this lawsuit was filed until the date of any certification order.

42. Excluded from the Class are all officers and employees of Allstate and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

43. Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies.

44. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

9

45. Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of Fed. R. Civ. P. 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under Defendant's standardized policy language, Plaintiff and the class members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

46. Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to make a FTLP upon the total loss of insured vehicles.

47. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class.

48. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

49. Class action is necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(a), because the prosecution of separate actions by or against individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

50. Class treatment is also necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(b), because the prosecution of separate actions by or against individual Class Members would create a risk of

adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications, or would substantially impair or impede their ability to protect their interests.

51. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members are relatively small, their interests in maintaining separate actions are questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

52. The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through myriad separate lawsuits.

53. Excluded from the Class are all officers and employees of Allstate and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

54. Plaintiff seeks certification of the Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

55. Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurers in the State of Ohio and writes hundreds of

millions of dollars of private-passenger physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity is established.

56. Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendant's standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

57. The members of the Class are ascertainable and readily identifiable from information and records in Allstate's custody, possession, or control.

58. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including sales tax and tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal

theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

59. Plaintiff's claims are maintainable on behalf of the Class Members pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate claims or defenses by or against individual Class Members would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (b) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

60. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

61. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

62. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein.

63. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages

suffered by individual Class Members is relatively small, their interests in maintaining separate actions are questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

64. Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Class in the future.

### **Declaratory Relief Pursuant to Ohio Revised Code Chapter 2721**

65. Under Ohio Revenue Code Chapter 2721, class treatment is warranted here because Defendant acted or refused to act on grounds generally applicable to all the members of the putative Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

66. Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief are brought efficiently, provides optimum relief to class members for their past and future injuries, and deters Defendant and other similar businesses from engaging in such wrongful conduct in the future.

67. Because Defendant acted consistently towards Plaintiff and all members of the putative Class, declaratory relief is appropriate with respect to the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

68. Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

69. Plaintiff retained the undersigned counsel and agreed to pay reasonable attorney's fees and costs in connection with this action. Plaintiff, for herself and the putative Class, is entitled to recover attorney's fees pursuant to Ohio statutory law and Ohio common law.

## COUNT I
## BREACH OF CONTRACT

70. The allegations in Paragraphs 1 through 69 are hereby incorporated by reference.

71. Plaintiff had an insurance contract with Allstate and performed all requirements under it.

72. Plaintiff made a claim under her policy that Defendant determined to be a first-party total-loss covered claim.

73. Plaintiff's Policy required that that Defendant pay her full sales tax, title-transfer fees, and registration fees on her total-loss because these taxes and fees are mandatory replacement costs for total-loss insured vehicles.

74. Defendant failed to pay Plaintiff sales tax, title-transfer fees, and registration fees under her Policy.

75. Defendant's failure to provide coverage, and to pay Plaintiff, for sales tax, title-transfer fees, and registration fees breached Defendant's contract with Plaintiff.

76. As a result of Defendant's breaches, Plaintiff has suffered damage and is entitled, under her Policy, to sums representing her sales tax, title-transfer fees, registration fees, pre-judgment and post-judgment interest, attorneys' fees, and all costs and expenses of litigation.

77. Plaintiff and the class members are entitled to an award of attorney's fees and costs under Ohio law and all contractual and statutory provisions allowing for recovery of attorney's fees.

## COUNT II
## CLAIM FOR DECLARATORY RELIEF

78. The allegations in Paragraphs 1 through 77 are hereby incorporated by reference.

79. This count seeks declaratory relief pursuant to Chapter 2721 of the Ohio Revised Code.

80. This count is brought by Plaintiff on behalf of Plaintiff and all members of the Class.

81. Plaintiff was party to a contract, the Insurance Policy, with Defendant as described herein.  *See* **Exhibit A**. All Class Members were parties to an Insurance Policy contract with Defendant containing materially identical terms.

82. Ohio law governs the interpretation and construction of Plaintiff and all Class members' insurance policies with Defendant.

83. Plaintiff and class members seek declaratory relief under the Policy (and all materially similar policies issued by Allstate to Class Members) that Plaintiff and all Class Members have the right to FTLP under the insurance agreements in question.

84. Plaintiff seeks a declaratory judgment that an insured is entitled to FTLP to pay a vehicle's ACV under the insurance policies that govern Plaintiff's and the class members' contractual relationships with Defendant.

85. Plaintiff seeks a declaratory judgment that the Ohio Administrative Code is not impliedly incorporated into the insurance policies that govern Plaintiff's and the class members' contractual relationships with Defendant.

86. Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

87. Because of Defendant's claim to the contrary, Plaintiff is in doubt as to her rights under the Policy.

88. The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to entitlement to FTLP.

89. The above allegations reflect that Plaintiff has presented a justiciable question as to the existence of her right to FTLP.

90. All antagonistic and adverse interests, namely Plaintiff and Defendant and the Class when certified, are before this Court by the filing of this count.

91. Pursuant to Ohio Revised Code Chapter 2721, Plaintiff is entitled to a declaration of Plaintiff's rights to vehicle title, taxes and registration fees to resolve her doubt about her rights under the Insurance Policy considering the Defendant's position otherwise.

92. Upon the Court granting Plaintiff the declaratory relief requested herein, Plaintiff will move the Court for supplemental relief in the form of an order directing that the vehicle tax, title fees and registration fees be paid to Plaintiff, and the Class, if certified, as well as a judgment for prejudgment interest and post-judgment interest, as the vehicle title and registration fees represents a liquidated amount.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

a) For an Order certifying this action as a Class Action on behalf of the Class described above;

b) For an award of compensatory damages for the Class in amounts owed by Defendant;

    c)       For declaratory relief to be entered for Plaintiff and the Class that her interpretation of the Policy is correct, thereby requiring Defendant to pay sales tax and title transfer fees and vehicle registration fees;

    d)       For all other damages according to proof;

    e)       For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

    f)       For costs of suit incurred herein;

    g)       For pre- and post-judgment interests on any amounts awarded; and

    h)       For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: January 16, 2020.                       Respectfully submitted,

/s/ Stuart E. Scott
**SPANGENBERG SHIBLEY & LIBER LLP**
STUART E. SCOTT (0064834)
sscott@spanglaw.com
KEVIN C. HULICK (0093921)
khulick@spanglaw.com
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq. (*pro hac vice* to be filed)
scott@edelsberglaw.com
David M. Sholl, Esq. (*pro hac vice* to be filed)
david@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis (*pro hac vice* to be filed)
efilings@shamisgentile.com
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915

**DAPEER LAW, P.A.**
Rachel Dapeer (*pro hac vice* to be filed)
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223

*Attorneys for Plaintiff and the Proposed Class*